UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
                                        :
CLIFTON MALLERY a/k/a ENJAI OMAA EELE   :
and AMNAU KARAM EELE,                   :
                        Plaintiffs,     :        07 Civ. 2250 (DLC)
                                        :
             -v-                        :        OPINION AND ORDER
                                        :
NBC UNIVERSAL, INC., NBC UNIVERSAL      :
TELEVISION STUDIO, TAILWIND             :
PRODUCTIONS, TIM KRING, DENNIS HAMMER,  :
ALLAN ARKUSH, JEPH LOEB and BRYAN       :
FULLER,                                 :
                        Defendants.     :
                                        :
----------------------------------------X

Appearances:

For Plaintiffs:
John A. Coleman, Jr.
Freidberg Cohen Coleman & Pinkas, LLP
444 Madison Avenue, Suite 805
New York, NY 10022

For Defendants:
Marcia Beth Paul
Davis Wright Tremaine LLP
1633 Broadway
New York, NY 10019


DENISE COTE, District Judge:

    Plaintiffs Clifton Mallery a/k/a Enjai Omaa Eele and Amnau

Karam Eele ("plaintiffs") bring this action against the

defendants NBC Universal, Inc., NBC Universal Television Studio,

Tailwind Productions, Tim Kring, Dennis Hammer, Allan Arkush,

Jeph Loeb, and Bryan Fuller ("defendants") alleging that the

television series Heroes, which is (collectively) written,

produced, and broadcast by the defendants, infringes the copyrights held by the plaintiffs in their 777-page handwritten novel <u>The Twins: Journey of the Soul</u> ("<u>The Twins</u>"), their short film based on <u>Twins</u> entitled <u>The Letter</u>, and their painting series <u>Envious of America</u>. On June 15, 2007, defendants moved to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6). For the reasons stated below, the motion to dismiss is converted to a motion for summary judgment and is granted.

BACKGROUND

The following facts are taken from the complaint. Plaintiffs are "divination artists" known professionally as "The Twins." On April 22, 2005, plaintiffs screened their short film <u>The Letter</u> at Hunter College in New York City, exhibited paintings from their series <u>Envious of America</u>, and presented a lecture on their art. At this event, they also made available excerpts from their novel <u>The Twins</u>. Persons identifying themselves as writers from defendant Tim Kring's ("Kring") television show <u>Crossing Jordan</u> attended the event and "are believed to have taken copies" of those materials. Plaintiffs also screened <u>The Letter</u> at several other venues, and sent excerpts of <u>The Twins</u> along with a copy of <u>The Letter</u> to several entertainment executives, including to a corporate affiliate of defendants NBC Universal and NBC Universal Television Studio.

Defendant Kring conceived the idea for the television series _Heroes_ around October or November of 2005. _Heroes_ debuted on NBC in September 2006, and twenty-three episodes of the series had aired at the time the motion to dismiss was filed, constituting the first season of the series. Plaintiffs allege that _Heroes_ is "so strikingly similar" to their works _The Twins_, _The Letter_, and _Envious of America_ that Kring and the other defendants "must have had access to and copied" their work.

DISCUSSION

I. Governing Copyright Standards

"Copyright infringement is established when the owner of a valid copyright demonstrates unauthorized copying." _Tufenkian Import/Export Ventures, Inc v. Einstein Moomjy, Inc._, 338 F.3d 127, 131 (2d Cir. 2003) (quoting _Castle Rock Entm't, Inc. v. Carol Publ'g Group, Inc._, 150 F.3d 132, 137 (2d Cir. 1998)). In order to prevail on a claim for infringement, a copyright holder must show (1) "that his work was actually copied," and (2) "that the copying amounts to an improper or unlawful appropriation." _Castle Rock Entm't_, 150 F.3d at 137 (citation omitted).

Under the first prong, "[b]ecause direct evidence of [actual] copying is seldom available, a plaintiff may establish copying circumstantially by demonstrating that the person who

composed the defendant's work had access to the copyrighted
material, and that there are similarities between the two works
that are probative of copying." Jorgensen v. Epic/Sony Records,
351 F.3d 46, 51 (2d Cir. 2003) (citation omitted). Similarities
between the works are "probative" if, "under all the
circumstances, [they] make independent creation unlikely."
Laureyssens v. Idea Group, Inc., 964 F.2d 131, 140 (2d Cir.
1992) (citation omitted).

The second prong requires a plaintiff to demonstrate
"unlawful appropriation." This reflects a recognition that even
where "actual copying" may have occurred, not all such copying
is actionable under the copyright laws. To establish "unlawful
appropriation," a plaintiff must demonstrate "substantial
similarity" between the original and allegedly infringing works.
Tufenkian Import/Export Ventures, 338 F.3d at 131 (citation
omitted). The works are "substantially similar" if the
similarities are "more than de minimis," and if "it was
protected expression in the earlier work that was copied." Id.
(citation omitted). Where the copying is not literal or does
not plagiarize the protected work, infringement may nonetheless
occur. Id. at 132-33. To determine whether a defendant has
infringed a plaintiff's copyright in these circumstances, a
court must "analyze the . . . works closely to figure out in
what respects, if any, they are similar, and then determine

whether these similarities are due to protected aesthetic expressions original to the allegedly infringed work, or whether the similarity is to something in the original that is free for the taking." Id. at 134-35.

For the purposes of this motion, defendants do not contest that the plaintiffs hold registered copyrights in The Twins, The Letter, or Envious of America,[1] or deny that they had access to these works. Rather, defendants argue that there is simply no "substantial similarity" between these works and the television show Heroes, and that plaintiffs' copyright infringement claim therefore fails as a matter of law. Plaintiffs counter by pointing out both general and specific similarities between the works in question.

In light of the arguments presented, this motion is properly treated as a motion for summary judgment. Whether certain works are substantially similar to one another is a question of fact to be resolved by a jury. Cf. Yurman Design, Inc. v. PAJ, Inc., 262 F.3d 101, 111 (2d Cir. 2001) (citing Feltner v. Columbia Pictures Television, Inc., 523 U.S. 340, 355 (1998)). "However, a district court may determine noninfringement as a matter of law on a motion for summary

---

[1] Although the defendants' do not press this argument, it may be noted that the complaint itself and the record to date do not reflect that Envious of America, or any of the paintings that make up that series, have been registered with the copyright office.

judgment either when the similarity concerns only noncopyrightable elements of plaintiff work, or when no reasonable trier of fact could find the works substantially similar." Walker v. Time Life Films, Inc., 784 F.2d 44, 48 (2d Cir. 1986); see also Williams v. Crichton, 84 F.3d 581, 587 (2d Cir. 1996). Although the defendants filed their motion pursuant to Fed. R. Civ. P. 12(b)(6), the arguments raised in the defendants' motion papers and in the plaintiffs' opposition have focused almost exclusively on these questions -- i.e., whether the alleged similarities relate to noncopyrightable elements and whether any reasonable observer could consider the works substantially similar -- and thus it is appropriate to convert this motion to one for summary judgment in order to address the merits of the arguments raised by the parties.[2] Before a

---

[2] A district court must ordinarily give notice to the parties before converting a motion to dismiss to a motion for summary judgment. See, e.g., Kopec v. Coughlin, 922 F.2d 152, 154-55 (2d Cir. 1991). "A party is deemed to have notice that a motion may be converted," however, "if that party should reasonably have recognized the possibility that such a conversion would occur." Sira v. Morton, 380 F.3d 57, 68 (2d Cir. 2004) (citation omitted). Given the arguments raised by the parties (as well as the cases cited, which almost exclusively resolve such arguments on motions for summary judgment), the parties should have reasonably recognized that the instant motion could be converted to one for summary judgment. In any event, the parties have suffered no prejudice as a result of the conversion, as the works in question are the only documents it is necessary to review in order to resolve the questions presented by the motion; thus, "all material made pertinent to [a motion for summary judgment] by Rule 56" is already before the Court. Fed. R. Civ. P. 12(b).

discussion of the merits can proceed, however, it is first
necessary briefly to review the works in question.

II.  Summary of Works at Issue

A.  The Twins

The Twins is a 777-page, handwritten novel co-authored by
the plaintiffs.  It chronicles the lives of Idai and Hadah,
"twins" who are separated before birth into two different wombs
by their grandmother, a mystic named Madame Naomi Dachette.
"The Twins," as they are referred to, are born in the same small
town in Louisiana, and are aware from a young age that they
possess certain special abilities, which are partly genetic and
partly spiritual in origin.  Early in the novel, for example,
Idai predicts the crash of a plane carrying Dylan Renway, an
inhabitant of the town.  This prediction is embodied in a
"sketch" made by Idai.  Idai attempts to warn Dylan's mother
about the crash, but she ignores Idai's warning, and Idai later
sees in the newspaper that his prediction came true.  Later in
the novel, Idai will also make predictive sketches relating to,
among other things, the Columbine shootings and George W. Bush's
election in Florida.

The female twin, Hadah, also has the ability to see the
future, which she depicts in artwork affixed to the backs of
doors.  Hadah also has several other powers, including the

ability to make her enemies bleed using only her mind, and to transcend space and time. (Idai also appears to share these powers.) In addition, Idai and Hadah are both skilled martial artists.

The Twins are initiated into the Li-Maa Divination Clan by their grandmother, a "Diviner" who is the head of the Clan, as well as Servitor Ti-Qui Saru, a Diviner and "Nem-Fa" who can, among other things, walk through walls. The initiation rituals are elaborate and mystical. For example, the "opening the ground" ritual involves, <u>inter alia</u>, a sheet of fire in which "500,000 faces" appear and enter Hadah's body, and a stone that rises out of the ground and pulls Hadah down into the earth.

Idai and Hadah's families attempt, for a time, to hide The Twins' special abilities, and during this time Idai works as an engineer for oil companies in Texas, Kuwait, and Mexico, and Hadah works as a salesperson at a jewelry store and fashion model. Idai and Hadah eventually marry, and live in Los Angeles, Miami, and Manhattan.

In addition to tracing the origins and experiences of Idai and Hadah, <u>The Twins</u> follows numerous additional storylines and characters. For example, the novel tells the story of Olagaia Atune, who is born into poverty in Cuba, becomes an art dealer in America, discovers his own special powers -- such as the ability to erase people's memories -- and searches for The Twins

and two sacred twin statues. A character by the name of Professor Heinman also searches for The Twins, along with other people with "special abilities." Maitre Jess, a Hatian voodoo priestess, is a rival of Madame Dachette's with whom The Twins do battle. Maitre Jess's story is, in turn, intertwined with the story of several families from Cuba, including the Atune, Ferrer, Vega, and Illadro families, some of whom become involved with Maitre Jess, The Twins, the Santeria religion, and drug and organ trafficking.

The bulk of the novel concerns the intersecting story lines of the characters listed above (along with many others) and the physical and spiritual conflict between The Twins and Maitre Jess. In the last twenty-five pages, Idai makes another sketch prophesying the future, this time predicting that two planes will destroy the Twin Towers on September 11.[3] The Twins are initially hesitant to share this new "divination" with anyone, recalling that their predictions -- such as their prediction of the Columbine shootings -- are often ignored. The Twins overcome this initial reluctance and travel to the Port Authority to tell someone about their divination, and there they learn that Larry Silverstein is about to buy the doomed buildings. The Twins meet with several people who work for

---

[3] The copyright page of the novel states that it was written in June of 2001. Presumably, plaintiffs proffer the novel itself as proof of their own powers.

Silverstein in an attempt to warn him about the impending attack.  They agree to pass on The Twins' warning to Silverstein, but apparently to no avail, as the novel ends with The Twins watching the first plane hit the Twin Towers.

The tone and pacing of The Twins is sprawling and mystical. The narrative is an undifferentiated stream of description and dialogue without guiding punctuation, and the novel shifts repeatedly between various settings, including Louisiana, Cuba, Miami, Texas, Africa, Paris, New York, and more ethereal realms.

B.  The Letter

The Letter is a short film that plaintiffs assert is based on The Twins.  The film deals with The Twins' purported efforts to warn Robert De Niro and his company, Tribeca Films, of the September 11 attacks.  The Letter opens with a photograph of outer space, which is then superimposed on two figures (presumably The Twins), who walk down a hallway towards a wall on which there are several hand-drawn images.  The most prominent image is a symbol that plaintiffs refer to as a "cosmogram": a circle bisected by two straight lines, dividing it into four equal quadrants, as in a simplified Celtic cross. Background music begins to play -- a somewhat playful and repetitive tune driven by an acoustic guitar and a single male voice -- and the camera zooms into the center of the circle.

10

As the music continues to play, the captions state that, "[i]n March 2001 four views to September 11, 2001 were hand delivered by The Twins to Jane Rosenthal at Tribeca Films, owned by Robert De[]Niro." These "four views" are then catalogued. They are entitled: (1) "1st View: SIXTH RACE © 1995." This "view" is an image of the painting "Sixth Race," created by plaintiffs, which depicts several ghostly figures gathered around a central figure who appears to be wearing military medals. A photograph of George Bush and Alan Greenspan standing in a similar posture is then superimposed over this image, which plaintiffs state represents a "validation" of the "prediction" contained in the painting. (2) "2nd View: Compliant © 1999." Various symbols (crosses, letters, "cosmograms," etc.) appear one-by-one on the screen in several dozen rows to the sound of a typewriter. The bottom-right corner of the screen contains a section of a "cosmogram."[4] (3) "3rd View: AMNAU'S DIVINING BOARD © 2000." This "view" depicts a door on which various newspaper articles, photographs, and other assorted materials (e.g., a packet of sugar from the United Nations) are mounted, including one scrap of paper that refers to the World Trade Center. (4) "4th View: The Atta Page © 2001." This portion of the video slowly reveals a hand-drawn sketch that depicts, inter alia, two

_____

[4] Plaintiffs assert that the coded symbols "are used to predict the attacks of September 11," although The Letter itself does not suggest that interpretation.

planes crashing into the Twin Towers, the name "Atta," and the date and time of the September 11 attacks.

After the "four views" are described, the captions and video explain that these works, which plaintiffs assert predicted the September 11 attacks, were sent to Tribeca films and rejected. A pair of disembodied eyes then appears on the screen; the eyes are slowly revealed to be those of Mohamed Atta. Another video sequence shows photographs of Robert De Niro and Jane Rosenthal delivering food via boat to workers at Ground Zero, and of "The Twins" crying following the September 11 attacks.


C. <u>Envious of America</u>

The complaint states that <u>Envious of America</u> is a "series of oil-on-canvas paintings" painted in 1995 that have been exhibited at several galleries across the country. Plaintiffs assert that "The Sixth Race," which is depicted in <u>The Letter</u> and discussed in <u>The Twins</u>, is a part of that series.


D. <u>Heroes</u>

<u>Heroes</u> is an hour-long, weekly television series about ordinary people who discover that they posses extraordinary powers, and the complications, adventures, and dangers that follow. Key characters include Isaac Mendez, a comic-book

artist and drug addict from New York who can "paint the future" when high on heroin; Claire Bennet, a cheerleader from Texas who can heal herself; Mr. Bennet, Claire's adoptive father, who works for an unnamed organization that tracks people with special abilities; Mr. Bennet's assistant, "The Haitian," who can erase people's memories and block the use of certain heroes' powers; Hiro Nakamura, an office worker from Japan who can bend time and space; Matt Parkman, a policeman who can read minds; Nathan Petrelli, a politician running for Congress, who can fly; Peter Petrelli, Nathan's brother, who can "absorb" the powers of others; Sylar, a serial killer who robs others of their powers; Mohinder Suresh, a professor from India who, following in the footsteps of his slain father, seeks out those with special abilities in order to validate his father's genetic theories; and numerous others. As Mohinder and his father explain, the special powers possessed by these characters are the result of genetic changes caused by the human evolutionary process. During the twenty-three episodes of the first season, <u>Heroes</u> follows each of these characters as they discover their abilities and how they are meant to be used.

In an early episode, Issac paints a picture while high on heroin showing the destruction of New York City by what appears to be an atomic bomb, and Hiro -- during a brief visit to the future -- also sees the same event. Through various plot

twists, several of the heroes mentioned above undertake a quest to prevent this attack, during which time the heroes are also being hunted down by Sylar, who seeks to kill them, and sought out by Mohinder, who seeks to study and help them. Toward the end of the first season, Issac is killed by Sylar, but in the final episode the destruction of the city is averted when Peter -- who, it turns out, is the source of the explosion -- is flown by his brother Nathan to a point high above the city, where Peter can explode without harming anyone.

Heroes is suffused with a general air of suspense, due to the gradual revelation of various plot elements, the mysterious nature and origins of the heroes' powers, and the haunting musical soundtrack. The series is also characterized by a visual theme that calls to mind the show's comic-book predecessors in the superhero genre, including captions rendered in a "handwritten" comic-book style.


III.  Analysis and Comparison

Plaintiffs allege that Heroes infringes on their copyrights in The Twins, The Letter, and Envious of America. Having reviewed these works in some detail, it is readily apparent that these claims are wholly without merit, as nearly every instance of alleged similarity between Heroes and the plaintiffs' work relates to unprotectable ideas rather than protectable

14

expression and, viewed more broadly, the "total concept and feel" of these works are profoundly different.[5]  <u>Castle Rock</u>, 150 F.3d at 140.

Plaintiffs' complaint contains a litany of alleged "substantial similarities" between <u>Heroes</u> and either <u>The Twins</u>, <u>The Letter</u>, or both.[6]  Plaintiffs focus particularly on the similarities between Idai from <u>The Twins</u> and Isaac Mendez of <u>Heroes</u>, noting that both (1) are "minorities" (Idai is African-American and plaintiffs presume Issac Mendez to be Latino), (2) have the ability to "paint the future"; (3) often paint in oil on large canvasses; (3) create depictions of "two landmark New York City buildings being destroyed" (Idai the Twin Towers, Issac the Empire State and Chrysler Buildings); (4) create paintings of a bus being destroyed in the future, which prediction is then validated in a newspaper article; and (5) attempt to stop the destruction of those buildings.

---

[5] The parties contest whether plaintiffs' works can be considered in the aggregate for the purposes of evaluating their copyright infringement claim.  As the discussion below indicates, resolution of this question is not necessary, as plaintiffs' claim fails regardless of the manner in which their works are considered.

[6] Although the infringement claim also makes reference to <u>Envious of America</u>, the complaint does not assert any similarities between <u>Heroes</u> and that painting series specifically.  (Various references are made, however, to the plaintiffs "work" as a whole.)

Plaintiffs' allegations regarding the similarities between Idai and Isaac cannot form the basis for a copyright infringement claim for several reasons. On the most general level, a "minority artist" who has the ability to paint the future is an "idea" that is not protected under the copyright laws. As Judge Hand memorably noted in the landmark case of Nichols v. Universal Pictures Corp., 45 F.2d 119 (2d Cir. 1930):

> If Twelfth Night were copyrighted, it is quite
> possible that a second comer might so closely imitate
> Sir Toby Belch or Malvolio as to infringe, but it
> would not be enough that for one of his characters he
> cast a riotous knight who kept wassail to the
> discomfort of the household, or a vain and foppish
> steward who became amorous of his mistress. These
> would be no more than Shakespeare's "ideas" in the
> play . . . .

Id. at 121. In addition, (1) painting a future in which tragic and destructive events take place, such as the destruction of landmark buildings in New York City; (2) having a prediction confirmed by a newspaper report; and (3) making an attempt to prevent a tragic event in light of a prediction of the future, are simply "scenes a faire, [or] sequences of events that necessarily result from the choice of a setting or situation, [which] do not enjoy copyright protection." Williams, 84 F.3d at 587 (citation omitted).

Of course, it must be recognized that "[a] character is an aggregation of the particular talents and traits his creator selected for him. That each one may be an idea does not

diminish the expressive aspect of the combination." Warner
Bros. v. Am. Broadcasting Cos., 720 F.2d 231, 243 (2d Cir.
1983). That said, "just as similarity cannot be rejected by
isolating as an idea each characteristic the characters have in
common, it cannot be found when the total perception of all the
ideas as expressed in each character is fundamentally
different." Id. That is the case here. In sum, Idai is a
member of the fictional Li-Maa Divination Clan, as well as an
engineer and martial artist, and is one of a set of spiritual
twins; Issac is a comic-book artist and drug addict whose
ability to paint the future is only unlocked when he is high on
heroin. The "total perception" of these characters could hardly
be more different, and the plaintiffs' argument that they are
"identical but for the change in race" does not withstand
scrutiny.

The other alleged instances of similarity between Heroes
and the plaintiffs' works similarly fail to contribute to a
valid claim of copyright infringement, as they also allege
copying of unprotectable ideas such as a "stopping the
catastrophe story arc," the depiction of a "cosmogram" (which
appears in one scene in Heroes, as well as in The Letter and The
Twins), the use of symbols "to signal a plot event," characters
with "extraordinary abilities," and the use of "block capital

letters" in title sequences.[7] While the line between mere "ideas" and protected "expression" is famously difficult to fix precisely, see, e.g., Nichols, 45 F.2d at 121, these alleged "similarities" are textbook examples of the former.

The DVD submitted by plaintiffs in their opposition to the instant motion specifically identifies many of the alleged similarities between Heroes and The Letter, and only underscores the plaintiffs' failure to identify any actionable copying. For example, plaintiffs allege that "close up eye images are used" in both works in a way that is "virtually identical." In support of this claim, the DVD shows (1) the moment in The Letter in which Mohamed Atta's eyes are floating alone on the screen, after which his full face is revealed, and (2) a clip from Heroes in which the camera is tightly zoomed in on one character's eyes, then rapidly zooms out. Plaintiffs also argue that there are "twin characters" in both The Letter and Heroes; in support, the DVD shows an image from The Letter of The Twins walking down a hallway, followed by various scenes from Heroes in which there are two characters together on screen. Needless to say, close-ups of eyes and the depiction of two people simultaneously on screen -- or, as plaintiffs put it, the

_____

[7] It may also be noted that the letters used in the title sequences of The Letter and Heroes are not typographically similar, and thus plaintiffs' claim seems to be based solely on the use of white "block capital letters" against a largely black background in both works.

18

"twinning" of characters -- are not examples of protectable
expression under the copyright laws.  The absurd results that
would follow from holding otherwise need not be enumerated.  In
sum, having "analyze[d] the . . . works closely to figure out in
what respects, if any, they are similar," it must be concluded
that whatever similarities may be said to exist between Heroes
and plaintiffs' works are not "due to protected aesthetic
expressions original to the allegedly infringed work," but
rather related to ideas "in the original that [are] free for the
taking."  Tufenkian Import/Export Ventures, 338 F.3d at 134-35.

Plaintiffs also argue that the similarities they have
identified are evidence of a "total concept and feel" shared by
their works and Heroes.  See, e.g., Castle Rock, 150 F.3d at
140.  It is well established that "substantial similarity" may
be found where a later work appropriates the "total concept and
feel, theme, characters, plot, sequence, pace, and setting" of
an earlier work, even if no single instance of alleged copying
is itself actionable.  Id.; see also Tufenkian Import/Export
Ventures, 338 F.3d at 134.  As the summaries above indicate,
however, there is simply no "plausible claim that there is a
common aesthetic appeal between" Heroes and The Twins, The
Letter, or Envious of America.  Castle Rock, 150 F.3d at 140.
While plaintiffs have pointed out several highly generalized
similarities in characterization (e.g., the ability to paint the

future or erase people's memories) visual elements (e.g., the use of symbols, block lettering), and plot points (e.g., a threat to Manhattan, a solar eclipse), this "scattershot" listing "fails to address the underlying issue: whether a lay observer would consider the works as a whole substantially similar to one another," even without scrutinizing the plaintiffs' works to isolate their protected elements. Williams, 84 F.3d at 590. Having reviewed the works in question, no reasonable juror could find that they are substantially similar.

"Once one goes beyond th[e] level of abstraction" on which the plaintiffs' proffered similarities lie, "the similarity [between the works] disappears." Id. at 589. Heroes is a hour-long suspense/drama that mixes moments of action, humor, and mystery as it follows an eclectic, international group of genetically enhanced heroes and their quest to prevent a catastrophic explosion in New York -- an explosion that may be caused, it turns out, by one of their own number. The Letter, by contrast, is a fifteen-minute, documentary-style film with a jaunty soundtrack that presents an account of The Twins' attempt to warn Robert De Niro and Tribeca Films about September 11. While, on the most abstract level, both of these works concern the prevention of a tragic and violent event in New York, the "two stories are not similar in mood, details or

characterization," and, indeed, differ in nearly every relevant way. Reyher v. Children's Television Workshop, 533 F.2d 87, 92 (2d Cir. 1976). The Twins also presents a stark contrast to Heroes; it is a sprawling, fantastical story about, among many other things, two spiritual "twins" who are married to one another and are members of a mysterious "Divination Clan." Although the novel shares various superficial similarities with Heroes, as described in the complaint, the context, presentation, plot lines, narrative structure, and style of the two works are substantially different; indeed, the "the ordinary observer, unless he set out to detect" the similarities, "would be disposed to overlook them" -- precisely the opposite of what the copyright law requires to support an infringement claim. Boisson v. Banian, Ltd., 273 F.3d 262, 272 (2d Cir. 2001).

This conclusion is confirmed by a review of the case law, which reveals that creations far more comparable than Heroes and the plaintiffs' works have been found not to be "substantially similar" as a matter of law. See, e.g., Williams, 84 F.3d 581 (comparing children's book about visit to a dinosaur zoo to Jurassic Park); Walker v. Time Life Films, Inc., 784 F.2d 44 (2d Cir. 1986) (book Fort Apache and film "Fort Apache: The Bronx"); Warner Bros., 720 F.2d 231 (works containing the character "Superman" and television show "The Greatest American Hero"); Reyher, 533 F.2d 87 (children's book My Mother Is the Most

Beautiful Woman In The World and short illustrated story for children "The Most Beautiful Woman In The World"); Nichols, 45 F.2d 119 ("Abie's Irish Rose" and "The Cohens and the Kellys"). A review of these authorities and a comparison of the works at issue here compels the conclusion that "no reasonable trier of fact could find the works substantially similar." Walker, 784 at 48. Plaintiffs' infringement claim must therefore be dismissed.

CONCLUSION

The defendants' June 15, 2007, motion to dismiss is converted to a motion for summary judgment and is granted. An Order to be issued in connection with this Opinion will establish a schedule for addressing the defendants' request for costs and fees pursuant to 17 U.S.C. § 505.

SO ORDERED:

Dated:    New York, New York
          December 3, 2007

_____
           DENISE COTE
United States District Judge